Good morning. May it please the court. I'm Fudo, Don Fudo, representing the respondents. I believe this court, in this case, turns on a familiar adage, and that is that one can learn from their lessons. However, the mistake has to be something that people realize. The mistake that's germane to this case is Stowe v. Murashige. It happens to involve the exact same judge and the exact same counsel who, 13 years ago in Stowe, did not realize the differences between habeas jurisdiction and appellate jurisdiction. And so what happened at the hearing, the same mistake was made in Stowe, and the court was prevailed upon by counsel to just, and I quote, I would say the court can read to advantage and use to decide this case is actually Stowe v. Murashige, where the circuit court affirmed, which your honor did. That's at the excerpts of the record, 75 lines 13 through 22. The specific lesson that was lost on both the district court and counsel was that in Stowe, they were not addressing appellate jurisdiction. In fact, Rooker-Feldman as a doctrine was not even mentioned. That mistake permeated the constellation of errors in this with respect to the lack of jurisdiction, as well as the failure to recognize there are standards, assuming that we get to the merits, that the court has to meet. Counsel, is it your argument that the Rooker-Feldman doctrine precludes habeas review of a state court decision? Is that your argument? No, your honor. What is your argument? I believe that the Rooker-Feldman doctrine precludes the review, appellate review of a state judgment under 2241. Including for purposes of habeas review? As the court made clear in Gruntz, which I'm certain that all of you are familiar because you've all cited Knoll in your opinion. Then that is your argument. That Rooker-Feldman prevents us as a court from conducting habeas review of a state court proceeding. No. Well, a variety of, not 2254, but 2241. That's your argument. Exactly. Well, that's habeas. I understand. So the answer to Judge Rollins' question is yes, not no. My point with respect to Rooker-Feldman is this court has made clear, and as the United States made clear, that 2241 does not confer appellate jurisdiction. In Exxon, they specifically made that even more clear by contrasting it to 2254, where they said that. Neither of them confer appellate jurisdiction. In both instances, they confer district court jurisdiction. Appellate jurisdiction is conferred by ordinary appellate jurisdiction of 2291 or whatever. 1391, I guess. I don't understand that. I don't know what you're saying. Well, what I'm saying is basically I believe what Your Honor acknowledged in Henrichs v. Valley View that. In what case? I think it's pronounced Henrichs v. Valley View. That's 474. Vet third at 609. Where you recognize what Exxon says, and it deals with the appellate jurisdiction that 2254 confers. You also in that case cited to Gruns, which makes it clear that it's not an exception. 2254 is simply Congress's constitutional authority to confer appellate jurisdiction in a district court. Counsel, did you cite the Hendricks case in your brief? I did not. I cited Noll. I cited Gruns. I cited Exxon. I cited Skinner. All standing for those same propositions. What I did do subsequent when I got the notice of the panel, I went back for the last 20 years and read all the opinions that you folks, excuse me, that this honorable court has been on. What I did, I'd like to reserve, sorry, I forgot, four minutes for rebuttal. And what I did also do is go back and review Stowe. Ricker's not mentioned in Stowe. So at the hearing, counsel said there was supplemental briefing where evidently the panel caught it on 2254. But I have to have every confidence to believe that something is important. Can you explain to me why it makes a difference if it's 2254 or 2241 as a matter of the statute? Exactly. On his face. 2254 includes the word judgment. And that's what Exxon in this court has said confers the appellate jurisdiction, which is separate and distinct from habeas jurisdiction. Both of which must be conferred by Congress. So in the event the supplemental briefing in Stowe entertained the Rooker-Feldman doctrine, I have to believe the court would have addressed it. But if you look at Stowe, there's not a single mention of Rooker-Feldman. There's not a single mention of appellate jurisdiction. Isn't the history of this that 2241 was the original habeas statute? And then 2254 was added later as a limitation on it. But that 2241 has always included judgment. In other words, 2241 is the backdrop. And it includes habeases involving judgments. And 2254 is a limitation on a subcategory of cases, those involving judgments, which have more stringent standards. But 2241 is the predecessor in the original statute, no? Actually, that's not correct. It's not? And this court made that clear in Harrison v. Gillispie, which was also a double jeopardy case, brought properly under 2241 because they weren't challenging the judgment. All right, but I'm asking you the history, where it came from. Wasn't 2241 there first? That I'm not certain. But to the extent it doesn't authorize the review of a judgment, which is a problem. Well, who says it doesn't authorize review of a judgment? This court in Gruntz, as well as the Supreme Court in Exxon. Said it doesn't authorize review of a judgment? Yes, Your Honor. Really? Exxon clearly says it. Actually, it's in footnotes. Exxon wasn't about habeas, so how would it say that? Because they were discussing the federal jurisdiction. Right, but it said that 2241 doesn't involve a judgment? No, it said that when Congress wants to confer appellate jurisdiction on a district court, they would do so expressly as they did in 2254, which is exactly what this court recognized in Gruntz. Although this court was a little bit more eloquent and on point, noticing it's not an exception to Rooker. It's a constitutional prerogative provided by the Constitution to confer concurrent jurisdiction. Appellate jurisdiction . . . You want to discuss the merits? I mean, it's an interesting argument, but what about the merits? If you want to reserve four minutes, because you're now down to two and a half. Thank you. Thank you, counsel. Good morning. May it please the court. Peter Wolfe on behalf of Mr. Gouveia. I think now Chief Judge Thomas laid it out pretty carefully in Ray Gruntz in his opinion. In one sentence, it is well settled the Rooker-Feldman Doctrine does not touch the writ of habeas corpus. The jurisdiction here was in the district court by virtue of 28 U.S.C. 2241. Because Mr. Gouveia is not in custody pursuant to the judgment of a state court, he was in custody as a pretrial, a person who had been determined by the state courts to be eligible, as it were, for a second trial, having been acquitted at his first trial. So, it's a 2241 case. And here's the curious thing about the Rooker-Feldman Doctrine, and at least one of the cases that we cited, but the state never did. The second part of Rooker-Feldman, Feldman, was decided in 1983. And the judges of the Boston Municipal Court versus Leiden, that's the case that the state doesn't cite, was decided in 1984 by the exact same court. All the members were the same of the Supreme Court. And in Leiden, the question of jurisdiction and double jeopardy came up, and the jurisdiction was invoked under 2241 because Leiden was subject to bail. And no justice who had sat on, which was all of them, had sat on. And what people don't do is not very informative. Okay. If nobody asked them, it's no wonder they didn't do it. But I have a question. Yes. Presumably, the judgment that we're talking about here, or that he's talking about, is a state habeas judgment, right? Or is it an appeal of the mistrial, or what exactly is the judgment we're talking about? So Mr. Gouveia was, the jury came back. I know what happened. I want to know. But the judgment, was the mistrial, that's the judgment? What's the judgment? It's the fact that under the state procedure, as it played out, the state court concluded that Mr. Gouveia was subject to a second trial. Okay. Was there an appeal of that? So the state circuit court judge, trial court judge, said, I'm declaring a manifest necessity for mistrial. The defendant moved to dismiss, saying a second trial is going to- Moved to dismiss what? The indictment? The indictment. Right. Saying, or moved to preclude the second trial. The answer to my question is that there was, in fact, an appeal and a Hawaii Supreme Court determination on this question. And that's the judgment that we're talking about? That's the judgment of the Hawaii Supreme Court. That he could be tried twice without it violating double jeopardy. All right. And under 2241, he was obliged to exhaust that question. Right. Which he did. So under the theory, the Ricker-Feldman theory, there would essentially never be 2241 jurisdiction, because you would always have to exhaust whatever it is that you were- I mean, there is an implicit court-created exhaustion doctrine that applies to 2241, isn't there? That's exactly right. And so if the state is right about Rooker-Feldman's interaction with 2241, which is contrary to everything this court has ever said about it, then unbeknownst to anybody, including the Supreme Court, Justices and Lydon, the writ of habeas corpus has actually been suspended. With regard to anything that doesn't fit within 2254? Exactly. And your Honor is right that 2241 precedes, historically, 2254. 2254 is a limitation on 2241. That's exactly the case. And it's the statutory enactment of limitations that the Supreme Court was developing in death penalty habeas litigation. But the Congress in AEDPA basically turned those into statute, and that's what 2254 is. David, slightly moving off of that subject for a second. What were the steps, short of declaring a manifest misdemeanor or a mistrial, could the state trial court have done? Well, so we have two grounds on which we think Judge Mulway should be affirmed, one of which she adopted and the other which she rejected. So her conclusion, which I think was correct, was that the court could have examined the question of whether the taint that the trial court was concerned about by the fact of this vociferous, bald-headed, or shaven-headed person, whether that tainted the verdict. That could have been inquired into, and it seems to me would have resulted in a conclusion that that was harmless to the extent it existed because the jury expressed, or some jurors expressed a concern about some danger to themselves from their verdict. And the verdict was not guilty. Yeah, the thing that I found odd about this case is that the trial court had to have sort of assumed that the jurors were afraid of the victim's brother, and that would influence or taint their verdict, but they had already decided to acquit him anyway. So clearly, if there was that fear, there wasn't a taint. And this is the exact point that Judge Nakamura of the ICA and Justice Nakayama of the Hawaii Supreme Court made in their dissent. But the jury didn't know it was the victim's brother. It could have been the defendant's brother. Who knew who it was? The jury's note suggested that they were concerned because this man on the prosecution side of the courtroom was whistling and gesturing at the defendant. So there's some indication that they knew he was affiliated with the prosecution in some way? I think they knew that he was angry at the defendant. Is there a finding of that? I mean, it's kind of flimsy, isn't it, that they knew who this guy was? They just described him. Because he was on the prosecution side of the courtroom, they knew that he was – One of the points Judge Mulway made in concluding that she should grant the writ was that the trial court could have inquired into the circumstances, which it did, and then could have reassured the jurors that steps had been taken and that there was no reason for them to be concerned. And then it could have instructed the jury to go back and consider again, is this your verdict? So the judge could have taken the verdict and pulled the jury? Right. And that brings me to the second ground for affirmance, which is that we have a case that ended in a verdict, actually. And there's no stronger double jeopardy claim than that you can't try a person again after they've been acquitted. So here we have – and the deliberations ended. So we know for sure that the jury deliberated. They reached a unanimous verdict. They said so. They signed it. They dated it. And they were prepared to return to the courtroom and do it in open court. And the trial judge forestalled that. But the Martin Linden case and all the other cases we've cited say that when you have a verdict of acquittal, you're in a very unique situation from all others. The legal question is whether you had a verdict because it hadn't, in fact, been either read or polled or entered. It's true. You had a piece of paper saying what they concluded. Right. But Hawaii is a case which doesn't mandate polling. Polling is optional if the parties want it or the court wants to do it. So that's of no consequence. But the real issue that we're looking at is not whether there was a verdict, but whether the trial court correctly decided to manifest necessity determination. That's the issue that Judge Mulway decided the case on. So I think that is the first issue. We have offered as a second ground for affirmance the fact that there was an actual acquittal and the deliberations had ended, which is why this case is different from the Bluford case where the deliberations had not ended. Can I ask you about his custody status? So was he retried and found guilty and is he serving prison time now? No. Judge Mulway, upon granting the writ, directed the state not to retry him. And she stayed that part of her order pending this court's decision because the state made clear it was going to appeal. And then she did relieve him, though, of the conditions of his pretrial release and she declined to stay that aspect of her order. So right now he's basically waiting to hear from this court. If the court affirms Judge Mulway, the case is over for him. If the court reverses, then he'll face a second trial or maybe the Supreme Court will take an interest in the matter. But I think that Judge Mulway's decision was clearly correct and she articulated why. And she was also correct for another reason, which she didn't articulate, and that's that we have an actual deliberation ending in an acquittal and effect ought to be given to that acquittal. Here we do have two determinations by two appellate courts in Hawaii to the contrary. 2254 doesn't apply. Are those determinations, and they're not directly subject to AEDPA, but do we nonetheless apply a deferential standard to them? No. There's no deference under AEDPA. I know there's no deference under AEDPA. Is there deference under pre-AEDPA court-made law with regard? The real question that's being examined, I think, by this court and that was examined by the district court is was the state trial court's decision that there was a manifesto decision correct or not? And the appellate court's view of the matter is really of no legal consequence, unlike an AEDPA-related case. All right. Thank you, counsel. And, Mr. Fruto, you have two minutes and 30 seconds left. First of all, with respect to this last question that was asked, of course there's standards. And this court knows and recognizes the standard. One recent case was in Hoyle. If you also Westlaw Stowe v. Murashige, you will see that with respect to 2254, it's the clearly erroneous standard for findings of fact and it's abuse of discretion. That is the standard. And then, above and beyond that. Abuse of discretion with regard to what? No. The standard for mistrial is an abuse of discretion. The standard for a 2241 petition is the facts must be clearly erroneous, and there being abuse with respect to the law is just de novo. Right. We have no, there's no factual question here, is there? Actually, that's what Judge Monway thought there is. Her factual determination in contravention of the state courts was that there was no reasonable alternative to a mistrial. However, she said that. Okay? With respect to that, which is conspicuously absent from her order, is defense counsel's concession that a continuance isn't a viable alternative, that no further admission or admonition or instruction to the jury was a reasonable alternative. All the alternates had already been dismissed. So, to just. So, what if the alternates had been dismissed? Excuse me? So, what if the alternates had been dismissed? Well, because you can go with less than 12. But did they have less than 12? No, defense counsel didn't want to do that. I'm confused. There were 12 jurors. Right. Right? Right. And she could have, as they were suggesting, assured them that there were protections in place and suggested that they go back and, you know, determine if they want to reaffirm their verdict. And there were 12 of them. So, what's the difference if the alternates were dismissed? First of all, that's actually not a possibility. And it presupposes this chain of reasoning and this admonition that would be based on a continuance by an investigation for the judge to be able to make that insurance. I'm certain this court. How did we make a continuance? She had already. She spent, as I understand it, a couple days talking to the jury. Right? And they were all still there. They hadn't gone anywhere. And they hadn't been discharged. So, what's the continuance? That's what Judge Mulway said should have been done. I'm sorry. I don't understand what you mean. Why do you need a continuance? They're there. Well, even if you did need a continuance, they can come back in a week. But why do they need a continuance? That's what Judge Mulway said. Okay. I don't care what Judge Mulway said. I'm asking you why it's not a viable alternative to simply say, go back and, you know, and figure out and tell us whether you still stand by this verdict on the understanding that we're going to take care of any security problems you have. That's one possibility. Another possibility is at least to poll the jury and ask each of them in open court whether their verdict was in any way influenced by what happened. That's what they did over the course of two days. They did that, but they didn't do it in the guise of formally polling the jury after opening it, the verdict. Which is a very important and salient fact that Judge Mulway considered as critical evidence, which is clearly wrong because that wasn't before the judge. What the standard should be is, I believe, as Judge Wardall pointed out in United States v. Chapman, this relying on Arizona, you look at the process, you want to make certain that it was deliberate, not precipitous, whether the court was solicited of opinions of counsel, and whether the alternative was reasonably available, which is abuse of discretion. To say that there weren't other alternatives, Chapman makes quite clear that that doesn't make the alternative taken, an abuse of discretion, and more so when defense counsel was agreeing with it because then that raises the issue of the invited error. He agreed, no continuance. He agreed, no instruction. He agreed that the only thing that could occur was the declaration of mistrial. So to say that under those conditions, and the trial judge is a man, that he abused his discretion, there's just no precedent for that. There's absolutely no deference to the findings of the trial court, which under Anderson, United States Supreme Court case, and Cooper, they're supposed to get deference. There's supposed to be a presumption of correctness that can only be rebutted by clear and convincing evidence. And this court has said time and time again, the fact that there could be another interpretation, even reasonable, doesn't make the interpretation of the trial court unreasonable. All right. Thank you so much, counsel. You're well over, but you're right. Thank you very much. And Gavea versus Espina will be submitted. We'll take up Bruiser versus Hawaii.
judges: Wardlaw, Berzon, Rawlinson